IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GABRIELA ACERO VARGAS**, | Case No. 3:22-cv-1432-SI |
| Plaintiff, | **ORDER** |
| v. | |
| **GEICO CASUALTY COMPANY**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

Plaintiff Gabriela Acero Vargas (Vargas) brings this suit against Defendant Geico Casualty Company (Geico) for breach of contract. Vargas contends that Geico breached the parties' automobile insurance policy contract by denying Vargas' claim for underinsured motorist (UIM) coverage following a collision. Geico moves for summary judgment on the basis that it did not breach the insurance contract. Vargas cross-moves for partial summary judgment and also moves for this Court to certify a question to the Oregon Supreme Court. For the reasons below, the Court grants Geico's motion for summary judgment, denies Vargas' cross-motion for partial summary judgment, and denies Vargas' motion to certify.

A. **Factual Background**

On January 17, 2021, Vargas was injured in an automobile collision while riding as a passenger in a vehicle driven by her father. Vargas' father was entirely at fault for the collision. That vehicle was insured under an automobile insurance policy that Geico had issued to Vargas' father, although Vargas herself owned the vehicle. Vargas also was considered an "insured" under her father's policy because she lived in the same residence as her father.

In December 2021, Vargas resolved her claim against her father with Geico. Because Vargas' injuries and damages exceeded her father's liability policy limit, however, Vargas also pursued a UIM claim. Geico denied Vargas' UIM claim in January 2022, on the basis that Vargas was ineligible to recover UIM benefits under these circumstances. Vargas then filed suit in state court and Geico removed to federal court.

B. **Oregon Insurance Contract Interpretation**

In Oregon, interpretation of an insurance contract is a question of law. *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 469 (1992). "[T]he primary and governing rule of construction is to ascertain the intention of the parties." *Id.* To determine the intention of the parties, courts look to the terms and conditions of the insurance policy itself. Or. Rev. Stat. § 742.016. The court's role is "not to insert what has been omitted, or to omit what has been inserted," but rather "simply to ascertain and declare what is, in terms or in substance, contained therein." Or. Rev. Stat. § 42.230.

In making this determination, the court uses a three-step process. *Hoffman*, 313 Or. at 469; *see also Andres v. Am. Standard Ins. Co. of Wis.*, 205 Or. App. 419, 423 (2006). First, if the terms of the policy are unambiguous, the analysis ends and the unambiguous terms control. *Andres*, 205 Or. App. at 423. In considering whether a term is ambiguous, if the text of the policy includes a definition, a court must construe the policy in accordance with that definition.

PAGE 2 – ORDER

*Id.* If the policy does not define the disputed term, the court looks to "'ordinary meaning' and other aids to construction." *Id.* at 424. "The first aid to interpretation is determining whether the term at issue has a *plain* meaning. The meaning of a term is 'plain'—that is, unambiguous—if the term is susceptible to only one plausible interpretation." *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 308 (1999) (emphasis in original, citation omitted).

Second, if a term has more than one plausible interpretation and thus is ambiguous, the court next examines the term in the "particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman*, 313 Or. at 470. Finally, "[i]f the ambiguity remains after the court has engaged in those analytical exercises, then any reasonable doubt as to the intended meaning of such a term will be resolved against the insurance company and in favor of extending coverage to the insured." *N. Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 25 (2001) (cleaned up).

**C. Discussion**

    **1. Contract Analysis**

Vargas and Geico both move for summary judgment on the basis that the contract is unambiguous and their respective interpretations of the contractual provision at issue is correct and dispositive. Geico argues that because it insured the automobile at fault for the collision, Vargas cannot recover UIM benefits from that incident. Vargas argues that Geico confuses underinsured motorist coverage (UIM) with uninsured motorist coverage (UM) and so Vargas should be able to recover UIM benefits.

The Court first looks to the definitions in the insurance policy and the plain meaning of the contractual provision in dispute. Geico's insurance contract states, in relevant part:

> Notwithstanding O.R.S. §§30.260 to 30.300, we will pay all ***sums that the insured or the heirs or legal representative of the insured is legally entitled to recover as damages*** from the owner or

>operator of an *uninsured vehicle* because of *bodily injury* sustained by the *insured* caused by accident and arising out of the ownership, maintenance or use of the *uninsured vehicle*. The Uninsured Motorist Coverage provided in this Section IV includes Underinsured Motorist Coverage as required by O.R.S. §742.502.

ECF 15-1 at 7 (insurance contract) (emphasis in original). The policy defines several terms relevant to this dispute:

> **4.** *Insured vehicle* means:
>
> > (a) An *owned auto* that is insured under the liability coverage of this policy; . . .
>
> **10.** *Uninsured vehicle* means:
>
> > (a) A vehicle with respect to the ownership, maintenance or use of which there is no collectible motor vehicle bodily injury liability insurance, in at least the amounts or limits prescribed for *bodily injury* or death under O.R.S. §806.070 applicable at the time of the accident with respect to any person or organization legally responsible for the use of the vehicle, . . .
>
> \* \* \*
>
> *Uninsured vehicle* does not include:
>
> > (a) An *insured vehicle*, unless the vehicle is a *stolen vehicle*; . . .
>
> \* \* \*
>
> **10.** *Owned auto* means:
>
> > (a) any vehicle described in this policy for which a specific premium charge indicates there is coverage; . . .

ECF 15-1 at 8-9 (insured and uninsured vehicles), 26 (owned auto) (emphasis in original).[1]

---

[1] These definitions come from amendments to the original agreement. The original agreement includes substantially similar definitions. For example, the original UM coverage definition for "insured auto" is a vehicle "described in the declarations and covered by the bodily injury liability coverage of this policy," among other things. ECF 15-1 at 29. Both parties include the contract amendments as exhibits and there is no dispute that the amended definitions control.

PAGE 4 – ORDER

Geico denied Vargas' UIM claim because a "claimant may not recover UIM benefits when the complained of damages do not arise from the use of an 'uninsured vehicle.'" ECF 15-2 at 1 (Geico denial letter). The crux of this dispute thus lies in the meanings of "insured vehicle" and "uninsured vehicle" under Geico's insurance policy.

Vargas argues that UIM coverage necessarily applies to *insured* vehicles, not *uninsured* vehicles. Vargas contends that UM coverage by definition protects insureds seeking to recover damages from a tortfeasor who *lacks* his or her own automobile insurance, while UIM coverage protects insureds from tortfeasors whose automobile insurance limits are *insufficient* to compensate the insured for his or her damages. UM and UIM coverage provisions are mutually exclusive, Vargas argues, and Geico misunderstands its contractual and statutory obligations by denying Vargas' UIM claim because the at-fault vehicle was covered by an insurance policy.

Geico argues that Vargas misunderstands the meaning of the terms "insured vehicle" and "uninsured vehicle" in its policy. According to Geico, an "insured vehicle" in the context of both UM and UIM coverage is the vehicle owned by the insured and described in the insurance policy. The "insured vehicle" in the collision thus was Vargas' automobile because it was the vehicle described in insurance policy held by Vargas's father, *not* because the vehicle was protected by any insurance policy at all. Similarly, Geico asserts that "uninsured vehicles" in the context of UM and UIM coverage exclude the "insured vehicle" described in this policy unless that vehicle had been stolen. Because Vargas' father was driving a vehicle described in his insurance policy and that vehicle had not been stolen, the vehicle at issue was insured under the policy, not uninsured. In short, Geico argues that "insured vehicle" and "uninsured vehicle" are terms of art, defined by contract, that refer to whether the policy at issue insures a given vehicle or not.

The Court construes the disputed provisions in accordance with the definitions and finds that the plain and unambiguous text of the insurance policy supports Geico's interpretation. As the above excerpts detail, Geico defines an "insured vehicle" with reference to the liability coverage of "*this* policy," not the status of the vehicle generally as insured or uninsured. Vargas argues as though the opposite were true and does not otherwise respond to Geico's textual arguments. There is no dispute that Vargas' car was an "insured vehicle" under the terms of the policy, that the driver of this insured vehicle was at fault for the collision, and thus Vargas sustained no bodily injury "caused by accident and arising out of the ownership, maintenance or use of the *uninsured* vehicle." ECF 15-1 at 7 (emphasis added). Additionally, Vargas's father's policy limits for his liability coverage are the same as his policy limits for UM/UIM coverage. *Id.* at 2.

In another case, the Oregon Court of Appeals affirmed a trial court's grant of summary judgment in favor of an insurer under the same facts. *See Medyanikov v. Cont'l Ins. Co.*, 176 Or. App. 297, 304-05 (2001) ("The Honda is owned by Lyubov, is a covered vehicle under the recently acquired vehicle clause of the policy, and has identical liability and underinsured motorist coverage limits. It is by definition not a covered, underinsured vehicle within the meaning of ORS 742.502(2)(a) and the policy. Consequently, the trial court did not err in granting summary judgment regarding plaintiffs' second assignment of error.").

This construction of the insurance contract does not result in an illogical outcome. If a stranger were to be at fault and injure an insured, and the stranger chose to maintain a low liability insurance amount, the insured could make use of UIM coverage. If, however, an *insured* chose to maintain a low liability insurance amount and was at fault in causing his own injury,

then he may not rely on his own UIM coverage to supplement his choice of low liability coverage.

Vargas' other contentions—that Geico's arguments are illogical, that the insurance policy is contradictory or tautological, that the Oregon state legislature erred in developing model UIM coverage policies that Geico followed—all fail due to Vargas' misunderstanding of the fundamental contract terms. The Court thus grants Geico's motion for summary judgment.

### 2. Remaining Arguments

Vargas makes several other arguments that the Court will briefly address. Vargas contends that Geico's insurance policy violates Oregon law by failing to meet the minimum requirements for UM and UIM coverage set out by the Oregon state legislature. Insurers in Oregon must include uninsured motorist coverage in their policies. ORS § 742.502(1) (mandate); ORS § 742.504 (requirements). Vargas' first and second statutory interpretation arguments depend on the same misreading of "insured vehicle" and "uninsured vehicle" as above, however. Geico followed Oregon law closely in defining these terms and so meets the state's minimum requirements for UM and UIM insurance. *See* ORS § 742.504(2)(d), (k).

Vargas also argues that the state legislature modified these statutory provisions by passing Senate Bill (SB) 411 in 2015, rendering invalid several cases important to Geico's arguments. Vargas mistakes the impact of SB 411 on UIM and UM claims, as well as the relevance of "stacking" provisions to this matter, for reasons best articulated by the Oregon Supreme Court. *Batten v. State Farm Mutual Auto. Ins. Co.*, 368 Or. 538, 555-56 (2021) (explaining how the "2015 legislature changed the role of UM/UIM coverage" to address the gap between the insured's unsatisfied damages and his or her liability limits, rather than those liability limits and the lower limits of the tortfeasor's own insurance policy); *id*. at 541 n.4 (describing "stacking" as concerning the limitations that other coverage policies might impose on

an insured's UM/UIM policy). The change is not relevant to Plaintiff's argument in this dispute. The Court thus need not address the effect of SB 411 on *Wright v. State Farm Mutual Automobile Insurance Co.*, 152 Or. App. 101 (1998),[2] or on *Roberts v. State Farm Mutual Automobile Insurance Co.*, 311 Or. App. 235 (2021).

Vargas also argues that a description of UIM coverage on Geico's website conflicts with Geico's contractual terms. Because the Court finds that the disputed provisions are not ambiguous, the Court does not consider such extrinsic evidence.

Finally, Vargas asserts that the Oregon Supreme Court is best suited to evaluate this dispute. Vargas, however, fails to identify a specific question appropriate for certification or discuss the test for certification in Oregon. *See W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 311 Or. 361, 364-66 (1991) (describing five criteria for certifying questions to the Oregon Supreme Court or Court of Appeals). This Court on its own sees no reason to certify and so denies Vargas' motion.

**D. Conclusion**

The Court GRANTS Geico's motion for summary judgment, ECF 12. The Court DENIES Vargas' motion for partial summary judgment and motion for certification, ECF 14.

**IT IS SO ORDERED**.

DATED this 11th day of May, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[2] The Oregon Supreme Court reversed *Wright* in part on other grounds, 332 Or. 1 (2001).